UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRADIN ORGANICS USA LLC, | Case No. 23-cv-03373-AMO |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |
| TERRA NOSTRA ORGANICS, LLC, et al., | Re: Dkt. No. 42 |
| Defendants. | |

This case started as a trade secret dispute between an organic food supplier and the competing business started by some of its former employees. Defendants, the former employees and their new company, brought counterclaims against the Plaintiff and its parent companies. Counter-Defendant Tradin Organic Agriculture B.V. ("Tradin BV") and Defendant ACOMO N.V. ("ACOMO") (together, the "Dutch Entities"), move to dismiss the counterclaims for lack of personal jurisdiction. ECF 42. The Court heard the motion on March 7, 2024.[1] Having read the papers filed by the parties and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court hereby **GRANTS** the Dutch Entities' motion.

//

//

//

---

[1] At the same hearing, the Court also heard Plaintiff and Counterclaim-Defendant Tradin Organics USA LLC's motion to dismiss. The Court decides that motion in a separate order also issued today.

**I.      BACKGROUND[2]**

Plaintiff and Counterclaim-Defendant Tradin Organics USA LLC ("Tradin USA") initiated this lawsuit on the basis that its former employees misappropriated trade secrets for the purpose of gaining commercial advantages for Defendant and Counterclaim-Plaintiff Terra Nostra Organics, LLC, a company that now competes with Tradin USA.  Compl. (ECF 5) ¶¶ 2-5.  In particular, Tradin USA alleges that its former employees misappropriated trade secrets concerning Tradin USA's supplier network, contact database, prospective customers, logistics, and more.  Compl. ¶¶ 13-15.  Tradin USA sues Hendrik Rabbie, Caeli Perrelli, and Elena Luis ("Individual Defendants"), all of whom were previously employed by Tradin USA, as well as the company they created, Terra Nostra.  *See* Compl. ¶¶ 18-26.  The Court refers to the Individual Defendants and Terra Nostra Organics, LLC, as "Terra Nostra."

Tradin USA asserted claims for trade-secret misappropriation, breach of contract, breach of fiduciary duties, tortious interference, and defamation.  Compl. ¶¶ 34-79.  In response, Terra Nostra answered Tradin USA's Complaint and asserted four counterclaims against Tradin USA, as well as against two Dutch entities, ACOMO and Tradin BV. ECF 23 (Counterclaim, "CC").  ACOMO is an international holding company for 49 companies, including Tradin USA and Tradin BV.  Fortmann Decl. ¶¶ 4-5, Ex. A.  ACOMO and Tradin BV are incorporated and operate in the Netherlands.  CC ¶¶ 18-19.  They have no physical presence in California, nor are they registered to do business in California.  Fortmann Decl. ¶¶ 8-9.

Terra Nostra alleges that Tradin BV: (1) "treats Tradin USA as a sales office and makes all major decisions on behalf of Tradin USA," (2) allowed Tradin USA to negotiate some contracts on its behalf, (3) asked Mr. Rabbie to hold himself out as a Tradin BV employee at trade shows, and (4) manages Tradin USA's insurance. Dkt. No. 23 at 13–14, ¶ 22. It alleges that Ms. Fortmann, through ACOMO, "threatened" litigation against Mr. Rabbie while in California.  CC ¶ 23.  And it alleges that the Dutch Entities: (1) "maintain[] ownership" of Tradin USA,

---

[2] When resolving a motion to dismiss under Rule 12(b)(2) on written materials, the court accepts uncontroverted facts in the pleadings as true and resolves conflicts in affidavits in the plaintiffs' favor.  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

United States District Court
Northern District of California

1  (2) "view" themselves as owners of the trade secrets in Tradin USA's Complaint, (3) are "partially

2  responsible for enforcing" Tradin USA's contracts, (4) "regularly dispatch[]" employees into

3  California to "conduct business" with "customers and/or suppliers," (5) "authorized . . .

4  defamatory comments," (6) require Tradin USA to obtain approval for certain contracts, and

5  (7) "authorized" Tradin USA's suit for the benefit of the Dutch Entities through Ms. Fortmann.

6  CC ¶¶ 22-23.

7      Terra Nostra's Counterclaim I seeks declaratory relief stating that: (A) Tradin USA's trade

8  secret misappropriation claims fail; and (B) each and every non-competition and non-solicitation

9  agreement to which the Counter-Defendants are a party – throughout the world – are invalid and

10  unenforceable.  Counterclaims II, III, and IV allege, respectively, defamation, tortious interference

11  with a prospective business advantage, and a violation of California's Unfair Competition Law

12  (UCL), based on statements allegedly made by the Counter-Defendants to Terra Nostra's

13  customers, its prospective customers, and Rabbie's family about the litigation.  Counterclaim IV

14  also alleges liability under the UCL for Counter-Defendants' alleged enforcement of its non-

15  competition agreements against unidentified individuals.

16  **II.     DISCUSSION**

17      The Dutch Entities move to be dismissed from the case on the basis that they are not

18  subject to personal jurisdiction in this forum.  A federal court may dismiss an action or a

19  defendant under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  When

20  resolving a motion to dismiss under Rule 12(b)(2) on written materials, the court accepts

21  uncontroverted facts in the complaint as true and resolves conflicts in affidavits in the plaintiffs'

22  favor.  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).  The party

23  seeking to invoke a federal court's jurisdiction bears the burden of demonstrating jurisdiction.

24  *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015).  "Federal courts ordinarily follow state law

25  in determining the bounds of their jurisdiction over persons."  *Daimler AG v. Bauman*, 571 U.S.

26  117, 125 (2014); *see* Fed. R. Civ. P. 4(k)(1)(a).  California's long arm statute permits exercise of

27  personal jurisdiction to the fullest extent permissible under the U.S. Constitution, therefore, the

28

United States District Court
Northern District of California

3

court's inquiry "centers on whether exercising jurisdiction comports with due process." *Picot*, 780 F.3d at 1211; *see* Cal. Code Civ. P. § 410.10.

The Due Process Clause of the Fourteenth Amendment "limits the power of a state's courts to exercise jurisdiction over defendants who do not consent to jurisdiction." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014). Due process requires that the defendant "have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Under the "minimum contacts" analysis, a court can exercise either "general or all-purpose jurisdiction," or "specific or conduct-linked jurisdiction" over an out-of-state defendant. *Daimler*, 571 U.S. at 121-22 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

Terra Nostra argues that the Dutch Entities are subject to personal jurisdiction in this forum under both general and specific jurisdiction analyses. The Court addresses the two bases for jurisdiction in turn.

### A. General Jurisdiction

For a foreign corporation to be subject to general jurisdiction in a forum, the corporation's affiliations with the state must be "so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler*, 571 U.S. at 137 (quoting *Goodyear*, 564 U.S. at 919 (2011)). The Supreme Court has emphasized that a corporation's place of incorporation and principal place of business are "'paradig[m] ... bases for general jurisdiction.'" *Daimler*, 571 U.S. at 137 (quoting *Goodyear*, 564 U.S. at 924). "Only in an 'exceptional case' will general jurisdiction be available anywhere else." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (quoting *Daimler*, 571 U.S. at 139 n.19).

The parties agree that the Dutch Entities are not "at home" in California – they are "at home" in the Netherlands. Fortmann Decl. at ¶¶ 3-6; *see also* CC ¶ 18 ("Tradin BV is a Dutch company based in Amsterdam, Netherlands"), CC ¶ 19 ("ACOMO is a Dutch limited liability company based in Rotterdam, Netherlands"). But Terra Nostra alleges that the general jurisdiction of Tradin USA, the subsidiary, may be imputed to the Dutch Entities because Tradin USA

United States District Court
Northern District of California

operated as their "agent."  CC ¶¶ 22-23.  After the Dutch Entities point out that the Supreme Court abrogated the Ninth Circuit's "agency" test, but "left intact the alter ego test for imputed general jurisdiction," *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1021 (9th Cir. 2017), Terra Nostra argues in its opposition brief that it sufficiently pleads that Tradin USA is the "alter ego" of the Dutch Entities sufficient to impute general jurisdiction upon them.

"The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests.  In certain circumstances the court will disregard the corporate entity and will hold the individual shareholders liable for the actions of the corporation."  *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1135-36 (C.D. Cal. 2015) (quoting *Mesler v. Bragg Management Co.*, 39 Cal. 3d 290, 300 (1985)); *see also Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071 (9th Cir. 2015) ("[I]n certain limited circumstances, the veil separating affiliated entities may also be pierced to impute liability from one entity to another.").  The alter ego theory of liability "is an extreme remedy, sparingly used."  *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 539 (2000).

The Dutch Entities argue that Terra Nostra's allegations fail to establish that Tradin USA is their alter ego.  First, the Dutch Entities aver, the new declarations submitted in support of Terra Nostra's alter ego allegations are too conclusory and devoid of factual support.  The Court agrees, as several of the statements upon which Terra Nostra relies constitute threadbare recitals of the elements of the alter ego test.  For example, both declarations submitted in opposition to the Dutch Entities' motion state, "No decision large or small was undertaken within Tradin USA without the explicit understanding that it would need to be justified and approved by Tradin BV."  Rabbie Decl. ¶ 8 (ECF 64-1 at 4-5) & Luis Decl. ¶ 4 (ECF 64-2 at 2) (using the same quote).  The declarants do not provide any factual support beyond this bare statement, and the Court need not accept those statements as true.  *Payoda, Inc. v. Photon Infotech, Inc.*, No. 14-CV-04103-BLF, 2015 WL 4593911, at *2 (N.D. Cal. July 30, 2015) ("[N]aked assertions devoid of further factual enhancement will not survive a motion to dismiss." (citation omitted)).

Second and more importantly, even if the Court overlooked the deficiencies in the allegations themselves, Tradin USA fails to satisfy the two-part alter ego test as a matter of law.

5

1   Under the alter ego test, "the parent-subsidiary relationship does not on its own establish two

2   entities as 'alter egos,' and thus does not indicate that general jurisdiction over one gives rise to

3   general jurisdiction over the other." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1021 (9th

4   Cir. 2017) (quoting *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015)). To impute Tradin

5   USA's jurisdiction to the Dutch Entities, Terra Nostra must establish: "(1) that there is such unity

6   of interest and ownership that the separate personalities of the two entities no longer exist and

7   (2) that failure to disregard their separate identities would result in fraud or injustice." *Id.* (citation

8   omitted).

9          The first prong, unity of interest, requires proof that the parent company "dictates every

10  facet of the subsidiary's business – from broad policy decisions to routine matters of day-to-day

11  operation." *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 983 (N.D. Cal. 2016) (Gonzalez

12  Rogers, J.).

13          Courts consider nine factors when assessing the first prong of the
            alter ego test: [1] the commingling of funds and other assets of the
14          entities, [2] the holding out by one entity that it is liable for the debts
            of the other, [3] identical equitable ownership of the entities, [4] use
15          of the same offices and employees, [5] use of one as a mere shell or
            conduit for the affairs of the other, [6] inadequate capitalization,
16          [7] disregard of corporate formalities, [8] lack of segregation of
            corporate records, and [9] identical directors and officers.
17

18  *Id.* at 983 (citation omitted).  In *Corcoran*, the plaintiffs filed a putative class action against CVS

19  Pharmacy (an in-forum subsidiary) and CVS Health (a foreign parent), *id.* at 975, alleging that the

20  former acted as the latter's "agent" or "alter ego" in California, *id.* at 979, 982.  CVS Health

21  responded that it was "nothing more than a holding company" for CVS Pharmacy, *id.* at 979, even

22  though CVS Health had "a substantial number of pharmacies, maintain[ed] two distribution

23  centers, and solicit[ed] employees in California," *id.* at 980.  In particular, the plaintiffs alleged:

24          (i) members of CVS Pharmacy's senior management team all also
            hold titles and senior positions with CVS Health; (ii) CVS Health
25          and CVS Pharmacy "share" certain executives, including the head of
            human resources and chief legal officer; (iii) the lone two members
26          of CVS Pharmacy's board are also senior executives for CVS
            Health; (iv) CVS Health's public filings show that CVS Health
27          provides management and administrative services to support the
            overall operations of all segments of CVS Health; (v) CVS Health's
28          website presents itself as one integrated company, including its

1
2
3

pharmacy division; (vi) CVS Health selected CVS Pharmacy's new president in 2013; (vii) CVS Pharmacy identified persons associated with CVS Health as having discoverable information in its Rule 26 initial disclosures; and (viii) persons who allegedly identify themselves as "employees" of CVS Health exchanged emails about the HSP program at issue in the litigation.

4    *Id.* at 982-83. The court found these allegations insufficient as a matter of law to impute CVS

5    Pharmacy's California contacts to CVS Health. *Id.* at 983-84. The same result follows here.

6          First, Terra Nostra does not allege that Tradin USA commingles its funds or assets with the

7    Dutch Entities. Terra Nostra asks for jurisdictional discovery to explore the comingling of

8    finances (ECF 64 at 15), but the Dutch Entities counter that it was Terra Nostra's burden to

9    establish personal jurisdiction in the first instance and Terra Nostra has failed to meet that burden

10    even with the insider information from former Tradin USA officers, Rabbie and Luis. Terra

11    Nostra's general request for discovery into the Dutch Entities' bank records is too general to

12    warrant jurisdictional discovery, particularly where Terra Nostra does not identify any facts about

13    commingling. *See LNS Enterprises LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 864-65 (9th Cir.

14    2022) ("But a mere 'hunch that [discovery] might yield jurisdictionally relevant facts,' [citation],

15    or 'bare allegations in the face of specific denials,' [citation], are insufficient reasons for a court to

16    grant jurisdictional discovery."). This factor weighs against finding unity of interest between

17    Tradin USA and the Dutch Entities.

18          Second, Terra Nostra claims that Tradin USA and Tradin BV have held themselves out as

19    liable for the debts of each other because they use the same trademark. ECF 64 at 14. Use of

20    trademark does not equate to expressing shared liability for debts. But further, the use of the same

21    trademark is mere "marketing puffery" that "carries no weight in establishing whether a parent and

22    its subsidiary are in fact alter egos." *Payoda*, 2015 WL 4593911 at *3; *see also Corcoran*, 169 F.

23    Supp. 3d at 983-84 (rejecting alter ego status even though the companies presented themselves "as

24    one integrated company on its website and in government filings for marketing purposes"). This

25    factor too weighs against finding unity of interest among Tradin USA and the Dutch Entities.

26          Third, there is no identical equitable ownership of the entities. Tradin BV has no

27    ownership interest in Tradin USA. ECF 66 (corporate disclosure). Terra Nostra does not identify

28    any facts regarding common ownership. This is not a situation where Tradin USA, Tradin BV,

United States District Court
Northern District of California

7

1  and ACOMO are all owned by a common entity.  This factor too weighs against finding unity of

2  interest among Tradin USA and the Dutch Entities.

3          Fourth, Terra Nostra argues that Tradin USA uses the same offices and employees as the

4  Dutch Entities.  For example, Tradin BV's CFO, Bob Kouw, served as the CFO of Tradin USA

5  for a period of nearly twelve years from September 2011 to May 2023.  ECF 59 ¶ 6.  In addition,

6  Tradin USA's financial director reported to the Tradin BV CFO.  ECF 60 ¶ 5.  Tradin USA and

7  Tradin BV also shared an IT team run by Tradin BV.  ECF 60 ¶ 8.  However, the sharing of some

8  executive officers does not establish unity of interest.  *Corcoran*, 169 F. Supp. 3d at 982-83 (CVS

9  entities shared head of human resources and chief legal officer).

10          Terra Nostra points also to a Tradin Organics webpage that shows the various affiliated

11  offices along with the different legal entities that are associated with each office for the premise

12  that the entities share office space.  ECF 64 at 14.  Terra Nostra contends that the webpage

13  identifies the California office of Tradin USA as a mere sales office.  *Id.*  The Dutch Entities

14  charge that Terra Nostra misstates the content of the website, but even accepting Terra Nostra's

15  representations, the designation of the Tradin USA as a "sales office" would not demonstrate unity

16  of interest sufficient to overcome the parent-subsidiary structure.  *See Gerritsen v. Warner Bros.*

17  *Ent. Inc.*, 116 F. Supp. 3d 1104, 1139-40 (C.D. Cal. 2015) ("[T]he fact that [the parent] may

18  denominate [the subsidiaries] 'units' or 'divisions'; that it issues press releases on their behalf in

19  its name; that defendants share common business departments and employees; and that [one

20  subsidiary] provides funding to [another] are not necessarily indicative of an alter ego relationship;

21  rather, they are common aspects of parent-subsidiary relationships.").  Terra Nostra's unsupported

22  charge fails to show that the entities use the same offices.  The fourth factor weighs against finding

23  unity of interest among Tradin USA and the Dutch Entities.

24          Fifth, Terra Nostra asserts that Tradin BV used Tradin USA as a shell or conduit for the

25  affairs of Tradin BV because Tradin BV treated Tradin USA as a disregarded entity for federal

26  income tax purposes.  ECF 64 at 14; Form 8-K at 55.  Terra Nostra represents, "[T]he

27  documentation from ACOMO's purchase of Tradin BV and Tradin USA indicates that Tradin BV

28  pays Tradin USA's taxes."  ECF 64 at 16.  The Dutch Entities explain that this is incorrect.

United States District Court
Northern District of California

1    Tradin USA was "an entity disregarded from its owner" according to the document Terra Nostra

2    cites. Form 8-K at 55. Tradin USA's "owner" prior to ACOMO's purchase of the Tradin entities

3    and at the time the Form 8-K was prepared was SunOpta Holdings, not Tradin BV, and SunOpta

4    Holdings in turn was owned by SunOpta Parent. This factor also weighs against a finding of unity

5    of interest between the entities.

6          Sixth, Terra Nostra fails to allege that Tradin USA is undercapitalized. Terra Nostra

7    acknowledges this defect and asks for discovery on this point, but it fails to articulate what it

8    would hope to find through such a fishing expedition. This factor weighs against finding unity of

9    interest.

10         The seventh factor largely overlaps with the others. Corporate formalities include

11   "adequate capitalization at each entity," "the proper documentation of transactions between the

12   entities," leasing facilities in the respective entities' names, maintaining proper books and records,

13   and properly paying taxes. *Ranza*, 793 F.3d at 1074. Rather than address these sub-factors, Terra

14   Nostra argues that the Dutch Entities disregarded corporate formalities by formulating business

15   policies for Tradin USA and by reorganizing its business structure. ECF 64 at 13-14. Setting

16   business policies and engaging in corporate restructuring are "common aspects of parent-

17   subsidiary relationships." *Gerritsen*, 116 F. Supp. 3d at 1139-40; *see also In re California*

18   *Gasoline Spot Mkt. Antitrust Litig.*, No. 20-CV-03131-JSC, 2021 WL 4461199, at *3 (N.D. Cal.

19   Sept. 29, 2021) ("Being concerned with profitability and insisting that a subsidiary follow

20   corporate-wide policies does not make a parent an agent of a subsidiary for specific personal

21   jurisdiction purposes; if that was the law, nearly every parent would be subject to personal

22   jurisdiction based on the contacts of its subsidiaries."). As the Dutch Entities note, ACOMO

23   relatively recently acquired both Tradin USA and Tradin BV and needed to find places for those

24   entities within its already-existing corporate structure. *See generally* Form 8-K. That ACOMO

25   engaged in corporate restructuring is proof that ACOMO adhered to corporate formalities, not

26   disregarded them. These efforts demonstrate that the Dutch Entities complied with corporate

27   formalities, contrary to Terra Nostra's bare accusations that such formalities were ignored.

28

United States District Court
Northern District of California

9

United States District Court
Northern District of California

1    Terra Nostra further contends that "Tradin BV . . . makes all major decisions on behalf of

2    Tradin USA, including because Tradin USA's management reports directly to Tradin BV's CEO,"

3    that Tradin BV manages Tradin USA's insurance, and that the Dutch Entities require approval of

4    contracts over certain thresholds.  CC ¶¶ 22-23.  These allegations fail to persuade that the Dutch

5    Entities disregard corporate formalities.  Tradin USA reports that it makes all of its day-to-day

6    decisions autonomously, contrary to the declarations from Rabbie and Luis.  Wolcott Decl. ¶¶ 3-6.

7    While Terra Nostra focuses on the need for Tradin USA to obtain approval for certain contracts

8    exceeding a dollar amount, Tradin USA executes roughly 95% of its sales contracts, up to and

9    including those that are worth $500,000.  *Id.* at ¶ 5.  Rabbie and Luis offer only factually

10   unsupported contentions to the contrary and thus fail to persuade that either of the Dutch Entities

11   exercises day-to-day control over Tradin USA.  *Cf.* CC ¶¶ 22-23.  Terra Nostra fails to show a

12   disregard for corporate formalities, and this factor weighs against finding unity of interest.

13   Eighth, Terra Nostra contends that a shared informational database between Tradin BV and

14   Tradin USA reflects a failure to segregate corporate records.  ECF 64 at 14-15.  An informational

15   database is not a "corporate record," as that term is used in the alter-ego context.  "Corporate

16   records" refer to such documents as articles of incorporation, charter documents, bylaws, meeting

17   minutes, governing documents, or stock ownership certificates.  *See, e.g.*, *Water Wheel Camp*

18   *Recreational Area, Inc. v. LaRance*, 642 F.3d 802, 806 (9th Cir. 2011) (meeting minutes); *Nat'l*

19   *Abortion Fed'n v. Ctr. for Med. Progress*, 134 F. Supp. 3d 1199, 1204 (N.D. Cal. 2015) (bylaws

20   and articles of incorporation); *Myhre v. Seventh-Day Adventist Church Reform Movement Am.*

21   *Union Int'l Missionary Soc.*, 298 F.R.D. 633, 648 (S.D. Cal. 2014) (bylaws, governing documents,

22   articles of incorporation, election of officers, and annual reports).  Terra Nostra makes no

23   allegations about actual corporate records, and it cites no authority for the proposition that a shared

24   informational database could be considered as such.

25   Ninth and finally, Terra Nostra claims that "Tradin USA does not have an executive

26   leadership team, but instead has only Vice President-level employees who report directly to Tradin

27   BV's CEO, Bas van Driel."  ECF 64 at 8.  The Dutch Entities argue that this statement is false.

28   First, they argue that Tradin USA has more than just vice-president-level employees – Hobbs

1   Wolcott is the President of Tradin USA.  ECF 44 ¶ 1.  Second, they contend without support, Bas

2   van Driel is not Tradin BV's CEO – Bas van Driel is the CEO of The Organic Corporation B.V.,

3   which is not a party to this dispute.  Even if the Dutch Entities are wrong, "[o]verlap between a

4   parent's and a subsidiary's directors or executive leadership alone, however, is not suggestive of a

5   unity of interest and ownership.  This is because '[it] is considered a normal attribute of ownership

6   that officers and directors of the parent serve as officers and directors of the subsidiary.' "

7   *Gerritsen*, 116 F. Supp. 3d at 1138-39.  The Court finds this factor neutral.

8        In sum, Terra Nostra's allegations are insufficient to establish general jurisdiction over the

9   Duty Entities based on their alter ego status because Terra Nostra fails to plead any facts regarding

10  the majority of factors considered for establishing alter ego.  Having found that Terra Nostra fails

11  to establish the first prong, the Court need not address the second prong of the alter ego test.  Terra

12  Nostra alleges only ordinary parent-subsidiary dynamics, which are insufficient to establish the

13  requisite unity of ownership interests to establish general jurisdiction.

14      **B.     Specific Jurisdiction**

15       A court may exercise specific jurisdiction over a defendant if its contacts with the forum

16  give rise to the claim or claims pending before the court – that is, if the cause of action "arises out

17  of" or has a substantial connection with that activity.  *Hanson v. Denckla*, 357 U.S. 235, 250-53

18  (1958); *see also Goodyear*, 564 U.S. at 924-25.  The inquiry into whether a forum state may assert

19  specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant,

20  the forum, and the litigation.  *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (citation omitted).

21       To determine whether a defendant's contacts with the forum state are sufficient to establish

22  specific jurisdiction, the Ninth Circuit employs a three-part test:

23              (1) The non-resident defendant must purposefully direct his
                activities or consummate some transaction with the forum or
24              resident thereof; or perform some act by which he purposefully
                avails himself of the privilege of conducting activities in the forum,
25              thereby invoking the benefits and protections of its laws;

26              (2) the claim must be one which arises out of or relates to the
                defendant's forum-related activities; and
27
28              (3) the exercise of jurisdiction must comport with fair play and
                substantial justice, i.e. it must be reasonable.

United States District Court
Northern District of California

11

*Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (citation omitted).  Terra Nostra

bears the burden of proof on the first two prongs, while the Dutch Entities bear the burden on the

third.  *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1086 (9th Cir. 2023); *see also*

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011) (requiring the

defendant to "set forth a 'compelling case' that the exercise of jurisdiction would not be

reasonable.").  In support of specific jurisdiction, Terra Nostra points to a few contacts between

the Dutch Entities and California, including conclusory allegations that the Dutch Entities

"authorized" this suit, "authorized" an ill-defined "defamation campaign," and "threatened"

litigation.  The Court considers whether this conduct supports specific jurisdiction over the foreign

counterclaim-defendants.

### 1.    Purposeful Direction

Under the *Calder* effects test, plaintiffs must show that defendants (1) committed an

intentional act, (2) expressly aimed at the forum state, (3) caused harm that the defendant knew

was likely to be suffered in the forum state.  *Calder v. Jones*, 465 U.S. 783, 789-90 (1984).  Based

on this test, the plaintiff must "establish that jurisdiction is proper for 'each claim asserted against

a defendant.' "  *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th

1012, 1035 n.13 (9th Cir. 2023) (citation omitted).  Accordingly, for each of counterclaims I(A)

(declaratory judgment as to trade-secret misappropriation), II (defamation), III (tortious

interference), and IV (Unfair Competition Law), this test requires Terra Nostra to prove that the

Dutch Entities (1) committed an intentional act; (2) expressly aimed at California; which (3)

caused harm that the Dutch Entities knew was likely to be suffered in California.

As to Counterclaim I(A), Terra Nostra makes three allegations.  First, it alleges that the

Dutch Entities "view" themselves as owners of the trade secrets it seeks to invalidate.  CC ¶¶ 22-

23.  But viewing oneself in a certain way is not an intentional act, has nothing to do with

California, and does not harm Terra Nostra in California.  *See Dale Tiffany, Inc. v. Meyda Stained*

*Glass, LLC*, No. 217CV00536CASAGRX, 2017 WL 4417585, at *6 (C.D. Cal. Oct. 2, 2017)

(holding that allegations regarding "defendants' mental state," such as being "'well aware' of

plaintiff's copyrighted works," is insufficient to establish purposeful direction).  Second, Terra

Nostra alleges that Fortmann "authorized Tradin USA" to file this suit for trade secret misappropriation on behalf of the Dutch Entities.  CC ¶¶ 22–23.  The Counterclaims lack well-pleaded facts explaining how Fortmann authorized Tradin USA to commence this action, *see Alexandria Real Est. Equities, Inc. v. RUNLABS (UK) Ltd.*, No. 18-CV-07517-LHK, 2019 WL 4221590, at *13 (N.D. Cal. Sept. 5, 2019) ("[C]onclusory allegations are not sufficient to demonstrate that the Court has personal jurisdiction over Defendants."), nor does it allege that Fortmann's authorization is, in itself, tortious, *id.* ("Plaintiff has not adequately pleaded that the fundraising trip represents tortious conduct expressly aimed at the forum state." (collecting cases)).

As to Counterclaims II (defamation) and III (tortious interference), Terra Nostra avers only that the Dutch Entities "authorized the defamatory statements" alleged in the counterclaims.  CC ¶¶ 22-23.  These allegations suffer from the same defect discussed in the preceding paragraph – they are too conclusory because they do not identify the substance of the allegedly defamatory statements with requisite specificity.  *See Alexandria Real Est. Equities*, 2019 WL 4221590, at *13; see also *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1313-14 (N.D. Cal. 1997) (discussing how general contentions that a defendant made defamatory statements are insufficient where they do not "identify the substance of what was stated by the Defendants.").

As to Counterclaim IV (unfair competition), Terra Nostra advances two allegations.  First, it posits that the Dutch Entities are "partially responsible for enforcing" Tradin USA's contracts.  CC ¶¶ 22-23.  Terra Nostra fails to adequately plead this contention because it does not explain what it means for a parent company to be "partially responsible for enforcing" Tradin USA's contracts.  But even credited as true and adequately pleaded, it fails to establish purposeful direction because being "partially responsible" for something is not an "intentional act," and is not "expressly aimed" at California.  *Davis*, 71 F.4th at 1162.

For the second allegation related to Counterclaim IV, Terra Nostra alleges that "Fortmann, traveled to this District to threaten certain legal claims described herein that form the basis of these counterclaims, including . . . the invalid non-compete and non-solicitation agreements."  CC ¶ 23.  Terra Nostra additionally falls short on the pleading of this allegation because it does not describe

United States District Court
Northern District of California

1    the legal claims asserted by Fortmann that relate to "the invalid noncompete and non-solicitation

2    agreements."  CC ¶ 23.  But even credited as true and adequately pleaded, "a single meeting"

3    between Rabbie and Fortmann in California fails to establish purposeful direction because

4    "discrete acts of threatening legal action are insufficient to show specific jurisdiction."  *Autonomy,*

5    *Inc. v. Adiscov, LLC*, 2011 WL 2175551, at *3-5 (N.D. Cal. June 3, 2011) (dismissing declaratory

6    judgment action against Virginia defendant even though it met with California plaintiff in Palo

7    Alto to threaten suit).

8        In sum, Terra Nostra fails to plead purposeful direction for any of its causes of action.

9                        **2.    Purposeful Availment**

10       The remainder of counterclaim I sounds in contract because it seeks declaratory judgment

11   regarding the validity of non-compete and non-solicit obligations.  CC ¶¶ 67-70.  Accordingly, it

12   is analyzed under the purposeful availment test.  *Davis,* 71 F.4th at 1162.  The purposeful

13   availment test requires " 'that there be some act by which the defendant purposefully avails itself

14   of the privilege of conducting activities within the forum State, thus invoking the benefits and

15   protections of its laws.' "  *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (citation

16   omitted).  A defendant purposely avails itself of the benefits of a forum if he " 'deliberately' has

17   engaged in significant activities within a State, . . . or has created 'continuing obligations' between

18   himself and residents of the forum."  *Id.* at 475-76 (internal citation omitted).

19       "A showing that a defendant purposefully availed himself of the privilege of doing

20   business in a forum state typically consists of evidence of the defendant's actions in the forum,

21   such as executing or performing a contract there."  *Schwarzenegger,* 374 F.3d at 802.  However,

22   "an individual's contract with an out-of-state party *alone* [cannot] automatically establish

23   sufficient minimum contacts."  *Burger King,* 471 U.S. at 478 (emphasis in original).  In context of

24   claims arising from a contract, such as here, a "showing that a defendant purposefully availed

25   himself of the privilege of doing business in a forum state typically consists of evidence of the

26   defendant's actions in the forum, such as executing or performing a contract there."

27   *Schwarzenegger,* 374 F.3d at 802.  Further, "prior negotiations and contemplated future

28   consequences, along with the terms of the contract and the parties' actual course of dealing," may

                                        14

support a finding of specific jurisdiction.  *Picot*, 780 F.3d at 1212 (quoting *Burger King*, 471 U.S. at 479).  As the Ninth Circuit made plain, the inquiry is limited to examining the defendant's conduct in the jurisdiction, not those of the plaintiff.  *Picot*, 780 F.3d at 1213.

Here, Terra Nostra does not allege that the Dutch Entities purposefully availed themselves of California law in any way that is related to the validity of Tradin USA's employment agreement with Rabbie.  The Dutch Entities are not parties to that contract.  Accordingly, Terra Nostra's conclusory allegation that the Dutch Entities are somehow "partially responsible" for enforcing Tradin USA's agreements and that they somehow "authorized" this suit are insufficient.  Terra Nostra fails the purposeful availment test as well.

## III.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion to dismiss Counterclaim-Defendants Tradin Organic Agriculture B.V. and ACOMO N.V.  The Court lacks general personal jurisdiction over these foreign entities and Counterclaim-Plaintiffs fail to establish specific personal jurisdiction related to the entities' alleged conduct.

**IT IS SO ORDERED.**

Dated: September 26, 2024

ARACELI MARTÍNEZ-OLGUÍN
**United States District Judge**